## Frank D. Everett et al. v. Patrick Foley.

### Gen. No. 4,692.

1. TRESPASSER—*who is not.* A person is not a trespasser who uses as a public way an apparently public alley, kept so by the defendant, simply because he steps over the technical legal boundary.

2. PERSONAL INJURIES—*when trustees appointed by will personally liable for.* Trustees are personally liable for injuries resulting from the negligent maintenance of property where all the duties devolving upon them are those which ordinarily devolve upon the absolute owners of property.

3. PERSONAL INJURIES—*when landlord liable for.* A landlord is liable for personal injuries which result from a dangerous condition of the premises where such dangerous condition existed at the time of the letting.

4. RES IPSA LOQUITUR—*doctrine of explained.* When the doctrine of *res ipsa loquitur* is applicable, the burden of explaining the negligence is on the defendant; nevertheless the burden of proof is not upon the defendant but he is only required to rebut the presumption arising from the proven facts.

Action in case for personal injuries. Appeal from the Circuit Court of Lake county; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the April term, 1906. Reversed and

remanded.  Opinion filed November 9, 1906.  Rehearing denied and opinion modified April 4, 1907.

David L. Zook and Reuben W. Coon, for appellants.

Frank A. Rockhold and Wiley W. Mills, for appellee; Charles Whitney, of counsel.

Mr. Justice Thompson delivered the opinion of the court.

Appellee sued defendants to recover for personal injuries suffered by him from being struck by an iron shutter falling from an upper window of a building which defendants were possessed of as trustees under a will.  Plaintiff recovered a verdict and judgment for $10,000 and defendants appeal.

The declaration was amended after the verdict, and in its present form the first count alleges that the defendants were possessed of a certain building on the 21st day of July, 1904, and then and there and for a long time prior thereto negligently permitted the said building to become and remain in bad repair; that the said building was furnished with metal shutters to the windows where the same abutted upon or near a public alley, and that defendants did then and there and for a long time prior thereto permit the said shutters and the fastenings thereto to become and remain in a bad state of repair, so that there was great danger of their falling from the window into the alley and that defendants knew, or ought to have known, of their said condition, and that as a result of said negligence one of said shutters became detached and fell upon and injured plaintiff, etc.  The second count alleges that defendants were possessed of and controlled, etc., and that defendants being so possessed, negligently permitted one of said shutters to become and remain in bad repair and the metal of which it was constructed and the hinges thereof to become decayed and rotten, etc.  The third count alleges that defendants on, to wit, July 21, 1904, were possessed of

and controlled a certain lot and the building thereon, and on the first day of May, 1904, being so possessed, did then and there lease the same to the Wonderland Company, and that for a long time prior to said first day of May the said building was and had remained in a bad state of repair, in this, that one of the metal shutters and the hinges or fastenings by which it was connected with the wall were decayed and insufficient to sustain the shutter, etc. The fourth count differs from the second in leaving out the word "controlled." The fifth alleges that defendants were possessed of said building and so negligently and carelessly kept the same that a metal shutter became detached and fell upon plaintiff, etc. All the counts allege plaintiff to have been in a public alley in the exercise of due care.

The will of James Campbell, which was admitted to probate in 1889, "gives and bequeaths" to George H. Campbell and Frank D. Everett in trust, the estate of the testator, to take possession of, keep, protect and improve the same during the lifetime of the wife of the testator and for ten years thereafter, and authorizes the trustees to borrow to the amount of $50,000 to improve and protect said estate from waste. On October 21, 1903, appellants, trustees, executed a lease of the four story brick building at 150 and 152 South Clark street, Chicago, to the Wonderland Company of Chicago for a museum from May 1, 1904, to May, 1908, for a rental of $36,000, payable in monthly installments. In the second clause of the lease it is stated that the lessee has examined the premises and received the same in good order and repair, and that no representations as to its condition have been made by the lessors and that the lessee will keep said premises in good repair during the term at its own expense. The third clause provides that the lessors shall not be liable for any damage occasioned by failure to keep said premises in repair. In the rear of the demised premises is an alley ten feet wide. The build-

ing does not cover the back six feet of the lot. Nine and one-half inches inside the alley line of the lot is an iron rail nine and one-half inches high and five inches wide, placed there as a curb to keep teams from getting nearer to the building. On the 21st day of July, 1904, appellee, a laborer, went into the alley in the rear of this building and sat down on the iron rail to eat his lunch. An iron shutter about eleven feet long and two feet wide fell from a window of one of the upper stories of this building and struck appellee, knocking him unconscious and seriously injuring him.

It is insisted that appellee was at the time of this injury, a trespasser and not in the exercise of due care. The appellee had the right to go into the alley to eat his lunch, or to drink a glass of beer. The iron beam was a few inches inside the alley line. Appellee could not know where the technical line of the alley was. By building the iron curb inside the line of the alley, the property outside the curb had been thrown open to the public, and appellee had the right to use the whole of the apparent public way. There is no principle of law which will warrant a court in holding a person to be a trespasser, who uses as a public way an apparently public alley, kept so by the defendant, simply because he steps over the technical legal boundary. To impose upon a person lawfully using public alleys the duty of ascertaining at his peril the technical division lines, before venturing to use the alley, would be an appropriation of public property in behalf of abutting property owners. When the owner of land invites the public to make use of it by connecting it with a public passageway as a part thereof, he must use due care to keep the same in a reasonably safe condition. Tomle v. Hampton, 129 Ill. 379; Crogan v. Schiele, 53 Conn. 186. The evidence warranted the conclusion however, that appellee was in the alley when he was struck. The shutter lay on him in the alley, and witnesses testi-

fied he was in the alley some feet from the iron rail, attempting to escape from the impending danger. We are of the opinion the jury were warranted in finding appellee was in the exercise of due care.

It is next insisted that there was no right of action against appellants, first, because they were only possessed as trustees under the will of James Campbell; and second, because they had leased the premises to the Wonderland Company. The will gives the premises to appellants as trustees, giving them exclusive control over the property until ten years after the death of testator's widow, and gives them authority to mortgage it to the extent of $50,000, to improve and repair it, and to preserve it from waste. It directs them to take possession of, keep and protect the estate, and provides the means to keep up repairs, if the income should not be sufficient. Appellants accepted the trust by qualifying under the will and taking charge of the property. All persons who had occasion to deal with this property must do so through the appellants. All the duties which devolve upon the owners of property were the duties of appellants, and if, through their negligence, any person should be injured, they are personally liable for the damages that result therefrom. Sherman & Redfield on Neg., 112, 115; Keating v. Stevenson, 21 App. Div. (N. Y.) 604; Norling v. Allee, 131 N. Y. 622; Ferrier v. Trepannier, 24 Can. S. C. 86; Shepard v. Creamer, 160 Mass. 496; Belvin's Excrs. v. French, 85 Va. 81.

Upon the second proposition, the property having been leased to the Wonderland Company, appellants will be held liable, if at the time of the leasing and taking possession by the tenant on May 1st, the premises were in bad repair. If the injury happened because of a dangerous condition existing at the time of the leasing, then it was the duty of appellants to see that the dangerous condition was remedied. Appellants could not by making a lease binding tenants to repair, avoid their own legal obligation. If a

dangerous condition existed and by ordinary diligence appellants would have discovered and remedied the condition, then it was negligence on their part not to have done so. While it is a general rule that the tenant or occupant of premises is liable for injuries to third persons arising from neglect to repair, yet the exception is as well established as the rule itself, that where the premises are rented in a bad state of repair, the landlord is liable for injuries caused thereby. Gridley v. Bloomington, 68 Ill. 47; Peoria v. Simpson, 110 Ill. 294; Helbig v. Slaughter, 95 Ill. App. 623; Borman v. Sandgren, 37 Ill. App. 160.

That appellee was injured by a shutter falling from a building of which appellants were possessed, but which was leased to, and under the control of the Wonderland Company, is certain. If the evidence shows that the shutter fell because of a state of decay that existed on May 1st, and which the appellants by reasonable care would have known of and remedied, then the judgment must be affirmed. The evidence shows that the shutter was made of thin iron, with an iron border half an inch thick and two inches wide all around it. It was old, and had holes rusted through the thin portion of it. It was fastened to the wall by three hinges. The evidence of both sides is that after the shutter had fallen, two of the hinges were on it apparently sound and uninjured. There is evidence that the third hinge broke off when a bystander attemped to lift the shutter off appellee, but the preponderance of the evidence shows that all three hinges were on the shutter intact and unbroken up to the day of the trial. If there were two sound hinges on the shutter after it fell, intact and unbroken, then it is manifest it did not fall because the parts of the hinges on the shutters were rusted and rotten. That allegation of the declaration is not sustained. One witness in testimony not responsive to the question put to him, said you could see where the bricks rotted away and the hinges fell out, but this was

excluded by the court on motion, apparently because it was not responsive to the question asked, and appellee did not further pursue that suggestion. The only evidence in the record as to negligence is evidence concerning the condition of the shutter and the part of the hinges on the shutter, and that the shutter fell. There is no evidence that the part of the hinges attached to the wall either broke or became detached, or were in any way defective. If it is the fact that the hinges had become loose in the wall and that brick fell with the shutter, then the accident was not caused by the rusty shutter and hinges, but by the rotten or decayed wall. If the proof had been made that was suggested by the answer of the witness that was excluded, then, perhaps, a verdict might have been sustained under the fifth count. The maxim *res ipsa loquitur* is relied upon by appellee, and counsel cite the cases of Mullen v. St. John, 57 N. Y. 567; Kearney v. London, etc., L. R., 6 Q. B. 759; Tarry v. Ashton, 1 Q. B. 314; R. R. Co. v. Hopkins, 54 Ark. 209, as authority for the application of that maxim in this case. These cases hold that an inference of negligence arises from the occurrence of an accident of this kind; that when damage is done by the falling of objects into a highway from a building, the modern rule is that the accident, in the absence of explanation, is of itself evidence of negligence that the burden of rebutting the presumption of negligence is upon the occupant of the building. While the cases state that when the doctrine of *res ipsa loquitur* is applicable, the burden of explaining the negligence is on the defendant, yet this does not mean that the burden shifts to the defendant, but only that the defendant must rebut the presumption arising from the proven facts. The phrase, "the burden of proof," is used in the sense of the duty of producing evidence, while the obligation of establishing the truth of the claim by a preponderance of the evidence rests throughout upon the party asserting the affirmative of the issue, and unless he meets this

Everett v. Foley.

obligation upon the whole case he fails. "The burden of proof never shifts during the course of a trial, but remains with him (plaintiff) to the end." Chicago Un. Tr. Co. v. Mee, 218 Ill. 9. If this case were against the Wonderland Company this rule might be applicable, and negligence in such case might be inferred from the occurrence itself. Appellee confined his proof to the shutter itself and the parts of the hinges attached thereto, with the fact that it fell into the alley. Holes that were in the thin portion of the shutter from the action of the laws of nature would not cause the shutter to fall while the hinges were sound and attached to the frame. That the shutter and hinges were rusted and the shutter fell, would not justify an inference that the parts of the hinges in the wall were loose and fell out, or that the mortar or brick were decayed, permitting the hinges to become detached from the wall. The record is devoid of proof concerning the wall or that any parts of the hinges became broken or decayed by natural laws so as to be unsafe or become detached from the wall. Appellants parted with control of the building May 1st, and in order to hold them responsible it must be shown that what caused this shutter to fall was that it was out of repair and in an unsafe condition at the time appellants delivered the building to the tenants, and this is not shown. For aught that appears here the falling of the shutter may have been due solely to the negligence of the tenants, or to some condition arising after May 1st. Because of this failure of proof to sustain the verdict, the judgment is reversed and the cause remanded.

*Reversed and remanded.*